| 73 | 315 |
| 76 | 164 |
| 77 | 547 |
| 73 | 315 |
| 89 | 201 |
| 91 | 98 |
| 91 | 99 |

HOCHSTADLER BROS. v. JOSEPH M. SAM.

No. 2696.

1. **Attachments—Torts.**—It seems to have been uniformly held that in the absence of statutory provisions allowing an attachment to issue on actions founded on tort it will not lie.

2. **Same.**—An attachment is not authorized where unliquidated damages are demanded, and the contract alleged as the cause of action affords no rule for ascertaining the damages, and the amount is not and can not with propriety be averred in the affidavit, and when the amount must be altogether uncertain until the jury have ascertained it, and for which operation no definite rule is presented to them.

3. **Drummer's Contract for Commissions.**—A contract by which a drummer is employed upon a stated commission upon his sales, he to bear his expenses, the employment being for a stated time, when broken does not contain a mode of determining the damages with sufficient certainty to support an attachment.

4. **Jurisdiction—Non-Resident.**—In a suit against non-residents not found in the State, the failure of the attachment made the basis of the action is fatal to the jurisdiction; the defendant only having appeared for the purpose of excepting to and resisting the attachment.

APPEAL from Harris.    Tried below before Hon. James Masterson.
The opinion states the case.

*Jones & Garrett,* for appellants. —1.    The plaintiff's suit being for unliquidated damages and not for a debt, no attachment could legally issue.    Drake on Attach., secs. 10–34; Freem. on Ex., sec. 167; Clark v. Dutton, 69 Ill., 521; 12 Ala., 180; 14 Ga., 230.

2.    It appearing from the plaintiff's pleadings as well as the defendants several pleas to the jurisdiction that the defendants were non-residents of the State of Texas, and that neither of them had been served with citation in this State, and that no property of the defendants had been legally brought within the jurisdiction of the court, the court was without jurisdiction, and the pleas should have been sustained and the cause dismissed.    Schmidt v. Martin, 2 W. & W. Ct. App. C. C., p. 72, sec. 91; Pennoyer v. Neff, 95 U. S., 714; 106 U. S., 353; 107 U. S., 545.

3.    The giving of the replevy bonds and moving to quash the attachments did not constitute an appearance.    Kennedy v. Morrison, 31 Texas, 221; Raquet v. Nixon, Dall., 386.    The answer expressly reserved and insisted on the pleas in abatement.

No brief for appellee reached the reporter.

HENRY, ASSOCIATE JUSTICE.—Hochstadler Bros. entered into a written contract with J. M. Sam by which they agreed to employ him as a traveling salesman in the eastern part of Texas and northern part of Louisiana for the purpose of selling ready made clothing by sample.

They agreed to pay him a commission on all sales made by him in said territory of eight per cent up to the amount of twenty thousand dollars and seven and one-half per cent on all sales in excess of that sum, to be computed on yearly sales. Hochstadler Bros. reserved the right to reject any sale made by Sam if the responsibility of the party making the purchase was not satisfactory to them. It was agreed that commissions should be paid only on such sales effected by said Sam as should be accepted and the goods shipped by said Hochstadler Bros. and accepted and retained by the purchaser. The agreement was to be in force for one year, beginning on December 1, 1885.

This suit was instituted by Sam for damages for breach of this contract. The defendants were not found within the jurisdiction of the court, but were served with notice according to the provisions of our statute in such cases, in New York, the State of their residence.

At the same time plaintiff sued out an original writ of attachment which was levied upon personal property of the value of five hundred dollars found within the jurisdiction of the court. The attached property was replevied by defendants.

Plaintiff's petition substantially charged that defendants were indebted to him in the sum of sixteen hundred and twenty-five dollars by reason of their failure to perform their part of the contract, whereby he was kept idle and prevented from doing or engaging in other business from the 15th day of May until the 1st day of December, 1886; that plaintiff's time was reasonably worth two hundred and fifty dollars per month, which he alleged defendants agreed and promised to pay, and that he was employed at their special instance and request, and that they were indebted to him as aforesaid.

Plaintiff filed a trial amendment in which he alleged that his commissions under the contract if it had been carried out would have amounted to the sum sued for from May 15, 1886, to December 1, 1886. That between said dates he was unable to secure other employment or earn anything, notwithstanding he used due diligence to do so.

Plaintiff made affidavit that defendants were indebted to him in the sum of one thousand six hundred and twenty-five dollars. Defendants pleaded to the jurisdiction of the court, and in abatement of the writ of attachment, their non-residence, and want of service of process upon them; that the attachment was unauthorized by law and did not give the court jurisdiction because plaintiff's pretended cause of action was for unliquidated damages and not such as would authorize or sustain a writ of attachment. The court overruled the plea.

Their plea to the jurisdiction being overruled, defendants pleaded to the merits subject to said plea. There was a verdict and judgment for plaintiff for six hundred dollars and foreclosure of the writ of attachment, from which defendants prosecute this appeal, and assign as error the action of the court in overruling their plea. Under this assignment they insist that "plaintiff's suit being for unliquidated damages and not for a debt no attachment could legally issue."

The question here raised has not been decided by this court. It seems to have been uniformly held elsewhere that in the absence of statutory provision allowing an attachment to issue in actions founded on tort, it will not lie. Drake on Attach., sec. 10.

Attachments are maintained in many cases for damages growing out of a breach of contract, notwithstanding they are unliquidated. But they are not allowed in all such suits.

The text-books deal more with cases in which the writ has been allowed in suits for damages for breach of contract than in developing the principle that authorizes its issuance in one case and denies it in another. The illustrations while solving the difficulty in perhaps the great majority of cases leave it in force in the others.

We think, however, that a rule sufficient for the determination of this case has been suggested and acted upon, and that the remedy does not exist where unliquidated damages are demanded, and the contract alleged as the cause of action affords no rule for ascertaining the damages, and the amount is not and can not with propriety be averred in the affidavit, and when the amount must be altogether uncertain until the jury have ascertained it, for which operation no definite rule is presented to them. Drake on Attach., sec. 24.

In Wilson v. Keedy, 8 Gill, 195, it was held that an attachment may issue "where the standard is so clearly ascertained by the contract itself as to enable the plaintiff to aver it in his affidavit."

In Warwick v. Chase, 23 Maryland, 161, it is said: "It is necessary that the standard for ascertaining the amount of damages claimed should not only appear but that it should be fixed and certain and in no degree dependent on facts either speculative or uncertain. The general rule is, that unliquidated damages resulting from a violation of a contract can not be recovered by attachment unless the contract affords a certain measure or standard for ascertaining the amount of the damages; and the cases cited show that the standard should be a subject matter of the contract and shown by it without the aid of inferences from extrinsic facts or circumstances."

In Wade on Attachments the conclusion is announced "that the standard by which defendant's liability is to be determined shall be furnished by the contract and not left open to mere speculation or vague conjecture. So where an action was brought on breach of a contract to

carry freight, and the damages claimed, in addition to the time, trouble, and delay, were principally for loss of probable profit on the cargo, this was deemed too indefinite and uncertain to enable the plaintiff to swear with certainty the amount due." Sec. 23.

"Though the plaintiff should in his affidavit for obtaining the attachment allege a cause of action founded on a contract, yet when it appears either from the declaration or the evidence that the true cause of action is not of that character it is the duty of the court to dismiss the suit." Drake on Attach., sec. 10, citing Elliott v. Jackson, 3 Wis., 649.

Our statutes allow attachments to be issued for "debts and demands" (article 155) upon plaintiff's making affidavit "that the defendant is justly indebted to the plaintiff and the amount of the demand." Art. 152.

It requires neither argument or illustration to prove that the amount here meant is such as can be fairly approximated and stated upon existing facts, such as the value of property destroyed or of its use when detained. An attachment may be issued in every instance when the amount does not depend upon uncertain contingencies unprovided for by the contract and when it is susceptible of proof based upon certain and existing facts; when the suit is for damages for breach of contract dependent upon existing and uncontingent facts and the damages claimed are actual and capable of estimation by the usual means of evidence, and not resting wholly or in part in the discretion of the jury, the affidavit required by our statute may properly be made and the attachment sued out.

The affidavit in such cases is an earnest of facts that may be proved by witnesses. The writ can not be based upon hypothesis or conjecture nor supported by the power of the jury to give damages in certain cases not strictly predicated upon the evidence of witnesses. Suits may be maintained in such cases, but without right to seize the defendant's property by any process before the debt is established by judgment.

The plaintiff earning anything in this case depended upon his finding purchasers of defendants' goods who were acceptable to defendant, and upon the amount he should sell such purchasers over and above his expenses incurred while engaged in the business which the contract required him to pay. What amount he could sell, if any, and what his expenses would be, were necessarily conjectural and uncertain questions. The standard that he offered on the trial was the amount sold in the same territory in the spring of the year under the same contract. Whether in the fall he would find the conditions the same even approximately was hypothetical and conjectural; and yet it was the only means of proof that he had to establish the amount of his damages. In fact he never went upon the ground during the months for which this suit is brought. He did not sell or offer to sell one dollar's worth of goods. If it be assumed that he could have sold some because he did sell some in the

preceding spring, the question would still remain what amount he would realize and what would be the amount of his expenses.

We can not believe or hold that when the statute requires the amount of indebtedness to be sworn to that it contemplates its being done either as a mere matter of form or that an inherent difficulty that forbids and prevents the exact or even approximate amount from being known until it is ascertained by the judgment of the court shall be overcome merely by a positive and precise manner of stating the debt in the petition and affidavit, afterwards departed from in the development of the true case. It does not at all follow that because a party may not have the aid of a writ of attachment in such case that he may not recover judgment for his damages even upon such proof as we have indicated, it being the best evidence that the nature of the case is susceptible of.

In this case, upon his own evidence mainly, and upon the contingencies upon which he estimated his profits would have been sixteen hundred and twenty-five dollars, the jury found by their verdict six hundred dollars.

It was only through the attached property that the court could have exercised jurisdiction over the defendants in this case, and then only to the extent of appropriating the attached property.

The attachment failing, the jurisdiction of the court, under the authority of Pennoyer v. Neff, 95 United States, 714, does not exist, and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 15, 1889.